Perry Elerts (Cal. Bar # 329665)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: 510-844-7157
Fax: 510-844-7150
Email: pelerts@biologicaldiversity.org

*Counsel for Plaintiffs Center for Biological Diversity
and Center for Environmental Health*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, and CENTER FOR ENVIRONMENTAL HEALTH,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Defendant. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

COMPLAINT

# I.  INTRODUCTION

1.      Plaintiffs the Center for Biological Diversity and the Center for Environmental Health bring this Clean Air Act citizen suit to compel the United States Environmental Protection Agency ("EPA"), to undertake overdue mandatory duties.  Specifically, Defendant, Andrew Wheeler, in his official capacity as Administrator of the United States Environmental Protection Agency has failed to make findings of failure to submit under 42 U.S.C. § 7410(k)(1)(B) for nonattainment state implementation plans ("SIPs") for the 2008 ozone National Ambient Air Quality Standards for Oil and Natural Gas Industry Control Technology Guidelines ("CTG") Reasonable Available Control Technology ("RACT") for the following areas listed in Table 1:

**TABLE 1[1]**

| STATE | Area | OIL AND GAS CTG RACT SUBMITTAL DUE DATE | FINDING OF FAILURE TO SUBMIT DUE DATE |
|---|---|---|---|
| Arizona | Phoenix-Mesa [Pinal] | 10/27/2018 | 4/27/2019 |
| California | Los Angeles-San Bernardino Counties (West Mojave Desert) [Antelope Valley] | 10/27/2018 | 4/27/2019 |
| California | Mariposa County | 10/27/2018 | 4/27/2019 |
| California | Sacramento Metro [Placer] | 10/27/2018 | 4/27/2019 |
| California | San Diego County | 10/27/2018 | 4/27/2019 |

---

[1] *See* https://www3.epa.gov/airquality/urbanair/sipstatus/reports/ca_elembypoll.html#ozone-8hr__2008__1414 last visited 1/22/20.

COMPLAINT

| Connecticut | Greater Connecticut | 10/27/2018 | 4/27/2019 |
|---|---|---|---|
| Connecticut | New York-N. New Jersey-Long Island | 10/27/2018 | 4/27/2019 |
| Connecticut | Ozone Transport Region (OTR) | 10/27/2018 | 4/27/2019 |
| Maine | OTR | 10/27/2018 | 4/27/2019 |
| Maryland | Baltimore | 10/27/2018 | 4/27/2019 |
| Maryland | OTR | 10/27/2018 | 4/27/2019 |
| New York | New York-N. New Jersey-Long Island | 10/27/2018 | 4/27/2019 |
| New York | OTR | 10/27/2018 | 4/27/2019 |
| Pennsylvania | OTR | 10/27/2018 | 4/27/2019 |
| Texas | Dallas-Fort Worth | 10/27/2018 | 4/27/2019 |
| Texas | Houston-Galveston-Brazoria | 10/27/2018 | 4/27/2019 |
| Wisconsin | Chicago-Naperville | 10/27/2018 | 4/27/2019 |
| Wisconsin | Inland Sheboygan County | 10/27/2018 | 4/27/2019 |
| Wisconsin | Shoreline Sheboygan County | 10/27/2018 | 4/27/2019 |

2.      Defendant, Andrew Wheeler, in his official capacity as Administrator of the EPA, has also failed to take final action under 42 U.S.C. § 7410(k)(2)-(4) for nonattainment SIPs for the 2008 ozone National Ambient Air Quality Standards for Oil and Natural Gas Industry CTG RACT for the following areas listed in Table 2:

COMPLAINT

**Table 2[2]**

| STATE | Area | COMPLETION DATE | FINAL ACTION DUE DATE |
|---|---|---|---|
| California | Imperial County | 5/14/2018 | 5/14/2019[3] |
| California | Kern County (Eastern Kern) | 2/09/2018 | 2/09/2019 |
| Massachusetts | OTR | 10/19/2018 | 10/19/2019 |
| Virginia | OTR | 6/05/2018 | 6/05/2019 |

3.      Defendant, Andrew Wheeler, in his official capacity as Administrator of the EPA, has

also failed to take final action under 42 U.S.C. § 7410(k)(2)-(4) for nonattainment SIPs for the

2015 ozone National Ambient Air Quality Standards for Oil and Natural Gas Industry CTG

RACT for the following areas listed in Table 3:

**Table 3[4]**

| STATE | Area | COMPLETION DATE | FINAL ACTION DUE DATE |
|---|---|---|---|
| Massachusetts | OTR | 10/19/2018 | 10/19/2019 |

Accordingly, Plaintiffs the Center for Biological Diversity and the Center for Environmental

Health bring this action against Defendant Andrew Wheeler, in his official capacity as EPA

Administrator, to compel him to perform these mandatory duties.

---

[2] *See* https://www3.epa.gov/airquality/urbanair/sipstatus/reports/ca_elembypoll.html#ozone-8hr_2008_1414 last visited 1/22/20.
[3] *Proposed Approval*, 84 Fed. Reg. 49,202 (Sept. 19, 2019).
[4] *See* https://www3.epa.gov/airquality/urbanair/sipstatus/reports/ca_elembypoll.html#ozone-8hr_2008_1414 last visited 1/22/20.

COMPLAINT

## II.  JURISDICTION

4.      This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a).

5.      An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III.  NOTICE

6.      On October 23, 2019 Plaintiffs mailed to EPA by certified mail, return receipt requested, written notice of intent to sue regarding the violations alleged in this Complaint.  More than sixty days have passed since EPA received this "notice of intent to sue" letter.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a present and actual controversy exists.

## IV.  VENUE

7.      Defendant EPA resides in this judicial district.  EPA Region 9, which has authority over California, is headquartered in San Francisco.  This civil action is brought against an officer of the United States acting in his official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California.  The Center for Environmental Health resides in the Northern District of California.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## V.  INTRADISTRICT ASSIGNMENT

8.      A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco.  EPA Region 9, which has authority over California, is

COMPLAINT

1    headquartered in San Francisco.  Accordingly, assignment to the San Francisco Division or the

2    Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d).

3                                                **VI.  PARTIES**

4    9.        Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3)

5    corporation incorporated in California.  The Center for Biological Diversity has approximately

6    67,373 members throughout the United States and the world.  The Center for Biological

7    Diversity's  mission is to ensure the preservation, protection, and restoration of biodiversity,

8    native species, ecosystems, public lands and waters, and public health through science, policy,

9    and environmental law.  Based on the understanding that the health and vigor of human societies

10   and the integrity and wildness of the natural environment are closely linked, the Center for

11   Biological Diversity is working to secure a future for animals and plants hovering on the brink of

12   extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

13   10.       The Center for Biological Diversity's members enjoy, on an ongoing basis, the

14   biological, scientific, research, educational, conservation, recreational, and aesthetic values of

15   the regions at issue in this action.

16   11.       The Center for Biological Diversity's members observe and study native species and

17   their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational,

18   and other benefits from these activities and have an interest in preserving the possibility of such

19   activities in the future.  These regions and species living there are harmed by air pollution.  The

20   Center for Biological Diversity and its members have participated in efforts to protect and

21   preserve natural areas, including the habitat essential to the continued survival of native species,

22   and to address threats to the continued existence of these species, including the threats posed by

23   air pollution.

COMPLAINT

28

12.     Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland, California headquartered nonprofit organization that helps protect the public from toxic chemicals and promotes business products and practices that are safe for public health and the environment. The Center for Environmental Health works in pursuit of a world in which all people live, work, learn, and play in healthy environments.

13.     Plaintiffs' members live, work, recreate, travel and engage in other activities throughout the areas at issue in this complaint and will continue to do so on a regular basis.  Ozone and volatile organic compounds pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members as well as their ability to engage in and enjoy their other activities.  Ozone and volatile organic compounds pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

14.     EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act.  The failure of EPA to perform the mandatory duties creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

15.     The above injuries will continue until the Court grants the relief requested herein.

16.     Defendant ANDREW WHEELER is the Administrator of the EPA.  In that role Administrator Wheeler has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.  Administrator Wheeler is also charged with overseeing all EPA regional offices including EPA Region 9, which has authority over California and is headquartered in San Francisco.

COMPLAINT

## VII.  LEGAL BACKGROUND

17.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assure that the air we breathe throughout the Nation is wholesome once again."  H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356.  To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants.  42 U.S.C. § 7409(a).  National Ambient Air Quality Standards establish maximum allowable concentrations in the air of such pollutants.

18.     After EPA promulgates a National Ambient Air Quality Standard, the Clean Air Act requires that EPA designate each area of the country as either a clean air area for that standard, which is known as "attainment" in Clean Air Act jargon, or a dirty air area, which is known as "nonattainment" in Clean Air Act jargon.  *See* 42 U.S.C. § 7407(d).  In addition, most of the northeast United States is part of the ozone transport region, which is essentially treated as a nonattainment area.  42 U.S.C. § 7511c.

19.     Under the Clean Air Act, each state is required to submit state implementation plans to ensure that each National Ambient Air Quality Standard will be achieved, maintained, and enforced.  Without such plans, the public is not afforded full protection against the harmful impacts of air pollution.

20.     For dirty air areas which EPA has designated as "nonattainment," states must submit nonattainment area state implementation plans.  *See* 42 U.S.C. §§ 7410(a)(2)(I), 7501 – 7509a, 7513 – 7513b.

21.     The Clean Air Act requires EPA to determine whether any state implementation plan submittal is administratively complete.  42 U.S.C. § 7410(k)(1)(B).  EPA must make this determination by "no later than 6 months after the date, if any, by which a State is required to

COMPLAINT

1   submit the plan or revision." *Id.*  However, if EPA does not make a determination of whether a

2   state implementation plan submittal is administratively complete, the submittal is deemed

3   administratively complete by operation of law six months after it is submitted.  *Id.*

4   22.    If a state fails to submit any required state implementation plan, there is no submittal that

5   may be deemed administratively complete, and EPA must make a determination, and publish

6   notice of that determination in the Federal Register, stating that the state failed to submit an

7   administratively complete state implementation plan submittal within six months of when the

8   submittal was due.  42 U.S.C. § 7410(k)(1)(B).  This is referred to as a "finding of failure to

9   submit."

10   23.    Once a state does submit a state implementation plan submittal, EPA has a mandatory

11   duty to take final action on any administratively complete state implementation plan submission

12   by approving in full, disapproving in full, approving in part and disapproving in part, or

13   conditionally approving within 12 months of the date the submission is deemed administratively

14   complete.  42 U.S.C. § 7410(k)(2) - (4).

15                                    **VIII.   FACTS**

16   24.    This case involves EPA's failure to timely implement the National Ambient Air Quality

17   Standards for ozone.  While ozone is critical for the protection of the Earth when it is in the

18   stratosphere, at ground level, ozone, the chief component of smog, is a dangerous air pollutant

19   which causes a variety of adverse impacts.  Ozone is not normally directly emitted.  Rather it is

20   formed in the ambient air from a reaction between volatile organic compounds and nitrogen

21   oxides in the presences of sunlight.

22   25.     According to EPA, based on exhaustive scientific review, ozone pollution causes

23   decreased lung function, increased respiratory symptoms, emergency department visits,

COMPLAINT

28

hospital admissions for respiratory causes, and even death. 73 Fed. Reg. 16,436 (Mar. 27, 2008).

26.      Those most at risk from ozone pollution are children; active people, *e.g.*, runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people. *Id.* at 16,440.  Ozone also damages vegetation, both native and commercial crops.  *Id.* at 16,485-16,486.  Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life sustaining services that ecosystems provide to people for free, such as clean air, clean water and carbon sequestration. *Id.*

27.      In 2008, EPA strengthened the primary and secondary ozone NAAQS from 0.08 to 0.075 parts per million (ppm).  73 Fed. Reg. 16,436 (Mar. 27, 2008).

28.      EPA made attainment and nonattainment designations for the 2008 ozone NAAQS effective July 20, 2012. *See* 77 Fed. Reg. 30,088 (May 21, 2012), 77 Fed. Reg. 34,221 (June 11, 2012).

29.      EPA designated all of the areas listed in Tables 1-3 as nonattainment or the areas are part of the ozone transport region.  *Id.*

30.      The required SIP element, RACT CTG for the Oil and Natural Gas Industry (2016), for the 2008 ozone NAAQS were due by no later than Oct. 27, 2018.  *See* 81 Fed. Reg. 74,798 (Oct. 27, 2016).  *See also*  https://www3.epa.gov/airquality/urbanair/sipstatus/reports/ozone-8hr__2008_ract_voc_ctg_oil_and_natural_gas_industry__2016__enbystate.html.  The RACT CTG for the Oil and Natural Gas Industry requires oil and natural gas production facilities like well pads to reduce their emissions of volatile organic compounds in areas which have an ozone pollution problem.  As the United States has increased its production of oil and natural gas,

COMPLAINT

28

1   emissions of volatile organic compounds has also increased resulting in persistent ozone

2   problems.

3   31.     Thus, EPA has a mandatory duty to make a completeness finding under 42 U.S.C. §

4   7410(k)(1)(B) for the SIP element Oil and Natural Gas Industry CTG RACT for the areas listed

5   in Table 1 by no later than April. 27, 2019, which is six months after the Oct. 27, 2018 deadline

6   for submittals.

7   32.     Table 2 lists the areas that have submitted Oil and Natural Gas Industry RACT CTG SIP

8   submittals for the 2008 ozone NAAQS.  It has been more than 12 months since these submittals

9   were found administratively complete by EPA or deemed administratively complete by

10   operation of law.  Yet,  EPA has not taken final action approving or disapproving, in full or part

11   these submittals.  Therefore, EPA is in violation of its mandatory duty to take final action to

12   approve or disapprove, in full or part the submittals listed in Table 2.

13   33.     In 2015, EPA strengthened the primary and secondary ozone NAAQS from 0.075 to

14   0.070 parts per million (ppm).  80 Fed. Reg. 65,292 (Oct. 26, 2008).

15   34.     Table 3 lists the areas that have submitted Oil and Natural Gas Industry RACT CTG SIP

16   submittals for the 2015 ozone NAAQS.  It has been more than 12 months since these submittals were

17   found administratively complete by EPA or deemed administratively complete by operation of law.

18   Yet, EPA has not taken final action approving or disapproving, in full or part, these submittals.

19   Therefore, EPA is in violation of its mandatory duty to take final action to approve or disapprove, in

20   full or part the submittals listed in Table 3.

21

22

23

COMPLAINT

28

# IX.  CLAIMS FOR RELIEF

## CLAIM ONE

### (Failure to Make Findings of Failure to Submit.)

35.     Plaintiffs incorporate by reference paragraphs 1 through 34.

36.     The deadline for the 2008 ozone National Ambient Air Quality Standard nonattainment area Oil and Natural Gas Industry RACT CTG state implementation plan submissions listed in Table 1 is no later than Oct. 27, 2018.  *See* 81 Fed. Reg. 26,697 (May 4, 2016); 80 Fed. Reg. 12,264, 12,266 (Mar. 6, 2015).  *See also* http://www3.epa.gov/airquality/urbanair/sipstatus/reports/ozone-8hr__2008_en.html.

37.     More than six months have passed since Oct. 27, 2018.

38.     For each of the areas listed in Table 1 above, the relevant states have failed to submit the nonattainment SIP element for Oil and Natural Gas Industry RACT CTG.

39.     Pursuant to 42 U.S.C. 7410(k)(1)(B), EPA has a mandatory duty to make a finding of failure to submit by no later than April. 27, 2019 for each  area listed in Table 1 above.

40.     EPA has not made findings of failure to submit for each of the areas listed in Table 1 of paragraph 1for failing to submit the nonattainment SIP element Oil and Natural Gas Industry RACT CTG.

41.     Thus, EPA is in violation of its mandatory duty to make a finding of failure to submit for each of the areas listed in Table 1.

## CLAIM TWO

### (Failure to Take Final Action on State Implementation Plan Submissions.)

42.     Plaintiffs incorporate by reference paragraphs 1 through 34.

COMPLAINT

43.     The Clean Air Act requires EPA to determine whether any state implementation plan submission is administratively complete.  42 U.S.C. 7410(k)(1)(B).

44.     If, however, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submission to be incomplete, the submission is deemed administratively complete by operation of law.  *Id*.

45.     EPA must take final action on an administratively complete submission by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submission's administrative completeness finding.  42 U.S.C. § 7410(k)(2) - (4).

46.     Each area's nonattainment SIP element submittals listed in Table 2 and Table 3 above was deemed administratively complete, either by EPA or by operation of law, by no later than the date listed in the Tables.

47.     EPA has a mandatory duty to take final action and publish notice of that action in the Federal Register, by approving in full, disapproving in full, or approving in part and disapproving in part each area's nonattainment SIP element submittals listed in Table 2 and 3 by no later than one year after the nonattainment SIP element submittal was deemed administratively complete.  42 U.S.C. § 7410(k)(2) and (4).

48.     However, EPA has failed to take final action to approve in full, disapprove in full, or approve in part and disapprove in part each area's nonattainment SIP element submittal listed in Table 2 and 3 by no later than one year after the nonattainment SIP element submittal was deemed administratively complete.

49.     Thus, EPA is in violation of its mandatory duty to take final action for each of the SIP element submittals listed in Tables 2 and 3.

COMPLAINT

1

**REQUEST FOR RELIEF**

2         WHEREFORE, Plaintiffs respectfully request that the Court:

3    A.    Declare that the Administrator is in violation of the Clean Air Act with regard to his

4          failure to perform the mandatory duties listed above;

5    B.    Issue a mandatory injunction requiring the Administrator to perform his mandatory duties

6          listed above by certain dates;

7    C.    Retain jurisdiction of this matter for purposes of enforcing the Court's order;

8    D.    Grant Plaintiffs their reasonable costs of litigation, including attorneys' and experts' fees;

9          and;

10   E.    Grant such further relief as the Court deems just and proper.

11                                    Respectfully submitted,

12

13                                    /s/ *Perry Elerts*_____
                                      Perry Elerts (Cal. Bar # 329665)
14                                    CENTER FOR BIOLOGICAL DIVERSITY
                                      1212 Broadway, Suite 800
15                                    Oakland, CA 94612
                                      Phone: 510-844-7157
16                                    Fax: 510-844-7150
                                      email: pelerts@biologicaldiversity.org
17
                                      Counsel for Plaintiffs
18
     Dated: January 22, 2020
19

20

21

22

23

     COMPLAINT

28